UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ANN MARGARET ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART ASSOCIATES, INC., et al.,<br><br>Defendants. | No. 2:25-cv-01916-DJC-CSK<br><br><br>ORDER |

Plaintiff Mary Ann Margaret Anderson filed this action in Solano County Superior Court, and Defendants removed the case to this Court based on diversity of citizenship. Pending before the Court is Plaintiff's Motion to Remand (ECF No. 10), which argues Defendants failed to establish the requisite amount in controversy for federal subject matter jurisdiction. For the reasons stated below, Plaintiff's Motion to Remand is denied.

**BACKGROUND**

Plaintiff Mary Ann Margaret Anderson filed this action in Solano County Superior Court against Defendants Wal-Mart Associates, Inc., Wal-Mart Inc., and 1–20 Doe Defendants. (*See* Compl. (ECF No. 1-4).) Wal-Mart hired Plaintiff to work as a Front-End Cashier in July of 2022. (Compl. ¶ 19.) The following year, Plaintiff injured her wrist at work. (*Id.* ¶ 21.) Due to this injury and ongoing back pain, Plaintiff

1

requested accommodations, which Defendants allegedly denied. (*Id.* ¶ 21–23.) According to the Complaint, other Wal-Mart employees both informed Plaintiff that her supervisors wanted to "get rid" of her and subjected her to derogatory comments regarding her age. (*Id.* ¶ 27–28.) When Defendants ultimately terminated Plaintiff in June of 2024, she was 81 years old. (*Id.* ¶ 29.)

Based on these events, Plaintiff alleges discrimination, retaliation, failure to accommodate, and failure to engage in the interactive process in violation of the California Fair Employment and Housing Act ("FEHA"), codified at Gov't Code §§ 12940, et seq. (Compl. at 1.) Plaintiff also alleges wrongful termination. (*Id.* at 18–19.) Plaintiff seeks relief in the form of a "money judgment representing compensatory damages including lost wages, earnings, commissions, retirement benefits" as well as special damages and general damages for emotional distress and loss of earning capacity. (Compl. at 20.) Plaintiff also seeks punitive damages and attorneys' fees. (*Id.*)

Defendants timely removed this action under 28 U.S.C. § 1441 based on diversity of citizenship. (*See* Not. (ECF No. 1).) Plaintiff is a resident of California, and Wal-Mart Associates, Inc. and Wal-Mart, Inc. are Delaware corporations with their principal places of business in Arkansas.[1] (*Id.* at 2; Mot. (ECF No. 10-1) at 1.) Plaintiff moved to remand this action, arguing Defendants failed to provide adequate evidence establishing that the amount in controversy exceeds the jurisdictional threshold of $75,000. (*See* Mot. at 1.)

Briefing is now complete, and the Court ordered this Motion submitted without oral argument pursuant to Local Rule 230(g). (Mot. (ECF No. 10-1); Opp'n (ECF No. 12); Reply (ECF No. 13).)

---

[1] Both Plaintiff and Defendants state that Plaintiff is a resident of California and that Wal-Mart Associates, Inc. and Wal-Mart, Inc. are Delaware corporations. Defendants have also provided evidence indicating their principal places of business are in Arkansas, (*see* Not. Exs. G–H (ECF Nos. 1-8–1-9), and Plaintiff does not dispute that the parties are diverse. (*See* Mot. at 1 n.1.)

**LEGAL STANDARD**

A case may be removed to federal court if that court would have jurisdiction over the matter. *See* 28 U.S.C. § 1441; *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). Subject matter jurisdiction exists in civil cases involving a federal question or diversity of citizenship. 28 U.S.C. §§ 1331, 1332. To support diversity jurisdiction, the amount in controversy in the case must exceed $75,000, 28 U.S.C. § 1332(a), and there must be complete diversity between the parties, meaning that "each plaintiff must be diverse from each defendant." *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001).

"A motion to remand is the proper procedure for challenging removal." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing 28 U.S.C. § 1447(c)). Generally, courts "strictly construe the removal statute against removal jurisdiction." *Acad. of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1068 (9th Cir. 2021).

The party asserting federal subject matter jurisdiction bears the burden of establishing its existence. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam). A removing party may rely on a chain of reasoning that includes assumptions. *Rosenwald v. Kimberly-Clark Corp.*, 152 F.4th 1167, 1176 (9th Cir. 2025). These assumptions must reflect more than "mere speculation and conjecture." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Such assumptions require "some reasonable ground underlying them," *id.* at 1199, but they "need not be proven." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). Assumptions may be reasonable if they are "founded on the allegations of the complaint." *Id.* at 925.

The Ninth Circuit has explained that a plaintiff's motion to remand is "the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)." *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). As such, a motion to remand may be based on either a facial attack or a factual attack on the defendant's jurisdictional allegations. *See id.* In a facial attack, the challenger takes the allegations in the complaint as true but challenges whether those allegations are sufficient to invoke jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039. A factual attack typically introduces evidence outside the pleadings, and the party asserting federal jurisdiction must then "support [their] jurisdictional allegations with 'competent proof,'" under "the same evidentiary standard that governs in the summary judgment context," *Leite*, 749 F.3d at 1121 (citations omitted). "[I]f the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Id.* (citations omitted).

**DISCUSSION**

**I. Plaintiff Brings a Facial Challenge to Jurisdiction**

Plaintiff brings a facial attack against Defendants' assertion of jurisdiction. Plaintiff does not challenge Defendants' assumptions about the facts underlying Plaintiff's claims. Rather, Plaintiff argues Defendants improperly rely on "assumptions that are unsupported by any evidence." (Mot. at 6.) For example, Plaintiff does not dispute Defendants' statement of Plaintiff's hourly rate or its assumption of her weekly hours but instead argues that Defendants failed to prove these numbers by producing corroborating evidence. (*See* Mot. at 4–5.) Therefore, Plaintiff facially attacks

Defendants' assertion of jurisdiction. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (holding Plaintiff mounted a facial attack on jurisdiction by arguing Defendant was required to "support its assertion with competent proof" but "not challeng[ing] the rationality, or factual basis" of the defendant's assertions).

**II. Amount in Controversy**

As the parties do not dispute that they are completely diverse, the sole issue before the Court is whether the amount in controversy exceeds $75,000. (*See* Mot. at 1 n.1; Opp'n at 6.) The Complaint does not allege the amount in controversy. Therefore, the burden is on Defendants to prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold. *See Matheson*, 319 F.3d at 1090. Defendants' Notice of Removal calculates the amount in controversy as follows: $46,543 for past lost wages, $73,590 in future lost wages, $25,000 in emotional distress damages, and $75,000 in attorneys' fees. (Not. ¶ 37.) Defendants also assert that Plaintiff's request for punitive damages adds to the amount in controversy but do not specify how much this request adds. (*See id.*) In their Opposition, Defendants amend their calculation of future lost wages to $70,441.58.[2] (Opp'n at 14.)

**A. Past Lost Wages**

Plaintiff's Complaint alleges that, because of Defendants' actions, "Plaintiff has suffered and will continue to suffer . . . past and future lost wages." (Compl. ¶ 35.)

---

[2] Courts can construe both a defendant's opposition and evidence provided after the notice of removal as amendments to the original notice of removal. *See Gen. Dentistry For Kids, LLC v. Kool Smiles, P.C.*, 379 F. App'x 634, 636 (9th Cir. 2010) (explaining that Ninth Circuit precedent "holds that a district court may consider later-provided evidence as amending a defendant's notice of removal"); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.1 (9th Cir. 2002) (holding district court did not err in construing defendant's opposition to plaintiff's motion to remand as an amendment to its notice of removal); *Pro 49 Dev., LLC v. Ness Express 1, LLC*, No. 2:24-cv-01850-JAM-JDP, 2024 WL 4542306, at *1 (E.D. Cal. Oct. 22, 2024) (explaining that "district courts have routinely considered filings other than the notice of removal when determining whether [they] have jurisdiction"). Further, as these calculations rely on the same fundamental assumptions, this Court does not have reason to question their validity. *Cf. Amirian v. Umpqua Bank*, No. 2:17-cv-07574-FMO-FFM, 2018 WL 3655666, at *3 (C.D. Cal. July 31, 2018) (explaining that "Defendant's failure to explain the basis for its shifting estimates causes the court to question the basis, validity, and accuracy" of the defendant's calculations where the defendant changed the estimates underlying most of its calculations between filings without any explanation).

Defendants calculated the amount in controversy for Plaintiff's past lost wages claim by multiplying Plaintiff's final hourly rate by her average weekly hours and the number of weeks for which she would be entitled to back pay.

Defendants assert Plaintiff's final rate of pay was $17.69 per hour and that she worked an average of 22 hours per week. (Mot. at 2; Opp'n at 12; Emmert Decl. (ECF No. 12-1) ¶ 2.) Plaintiff's argument against Defendant's reliance on these numbers misunderstands the relevant standard. Plaintiff's Reply does not dispute the accuracy of these numbers nor that Plaintiff's counsel has previously admitted they are accurate. Instead, the Reply maintains that this information must be supported by "summary judgment-type evidence." (Reply at 3.) However, as this is a facial rather than factual challenge to jurisdiction, Defendants are not required to supply evidence in support of their jurisdictional assumptions. *Salter*, 974 F.3d at 964; *see also Leite*, 749 F.3d at 1121. Rather, Defendants assumptions must only be reasonable. *See Arias*, 936 F.3d at 927.

Here, the Court finds these assumptions reasonable. First, Plaintiff's assumed hourly rate is reasonable because this rate is no more than $1.69 higher than California's minimum wage during the relevant period. (*See* Opp'n at 13.)[3] Second, Plaintiff's assumed average hours per week is reasonably based on the Complaint. The Complaint alleges that "[a]t all times hereto, Plaintiff . . . had worked at least 1250 hours during the previous 12 months," indicating she worked an average of at least 26 hours per week. (Compl. ¶ 71.) Therefore, it is reasonable for Defendants to assume she worked an average of 22 hours per week. Further, Plaintiff's counsel has corroborated these assumptions by identifying them as accurate in both pleadings

---

[3] Further, Defendants could meet the amount in controversy even if Plaintiff was only paid the lower rate of minimum wage during the relevant period. Under this rate, Plaintiff's past lost wages claim would add $36,960 ($16.00 [minimum wage at time of termination] x 22 (average weekly hours) x 105 weeks) to the amount in controversy. *See Lewis v. Arvato Digital Servs., LLC*, No. 5:24-cv-02693-AB-SHK, 2025 WL 1554331, at *4 (C.D. Cal. May 28, 2025) (explaining that California's minimum wage was $16.00 in 2024). Substituting this amount for this claim would bring the total amount in controversy to $91,960. (*See infra* at 10.)

and oral conversations. (*See* Mot. at 2 ("Plaintiff earned $17.69 per hour at the time her employment was separated" and "worked on average of approximately 22 hours per week"); Emmert Decl. ¶ 2 (explaining that Defendants' lawyer spoke on the phone with Plaintiff's lawyer, who "agreed Plaintiff's rate of pay was $17.69 per hour and she worked an average of 22 hours a week).) Given these assumptions are both reasonable and undisputed by Plaintiff, the Court finds Defendants appropriately relied on them in calculating the amount in controversy on this claim.

Defendants next multiply the Plaintiff's hourly rate and average weekly hours by the number of weeks for which Plaintiff would be entitled to lost wages if she prevailed on this claim. Defendants' Notice of Removal calculates that "if trial were set for eighteen months after Defendants were served, or 30 months (120 weeks) after her employment was separated, Plaintiff may be seeking a total of approximately 30 months of lost wages." (Not. at 7.) "To calculate the relevant period for Plaintiff's back pay damages, district courts in this Circuit find plaintiffs are entitled to back pay from the date of termination to trial." *Crockett v. Wal-Mart Assocs., Inc.*, No. 2:23-cv-01562-TLN-KJN, 2024 WL 516713, at *3 (E.D. Cal. Feb. 9, 2024). When the Court has not yet set a trial date, "courts have found one year from the date of removal to be a conservative trial date estimate." *Id.* (quoting *Beltran v. Procare Pharmacy, LLC*, No. 2:19-cv-08819-ODW-RAO-X, 2020 WL 748643, at *3 (C.D. Cal. Feb. 14, 2020)) (internal quotation marks omitted). Using this more conservative estimate, this claim adds $40,863.90 to the amount in controversy ($17.69 [hourly rate] x 22 hours [average weekly hours] x 105 weeks[4]).

Plaintiff's argument that this Court should reduce the amount in controversy on this claim due to Defendants' affirmative defenses misunderstands the inquiry at this stage. Plaintiff argues this Court should give "weight and consideration to

---

[4] The Court reached this number by adding the number of weeks between Plaintiff's termination and the filing of the Complaint (44), the number of weeks between the filing of the Complaint and the filing of the Notice of Removal (9), and the number of weeks between the filing of the Notice of Removal and the projected trial date (52).

7

[Defendants'] affirmative defenses set forth in their Answer filed in state court," such as failure to mitigate damages.  (Reply at 3–4.)  However, the "amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  The "strength of any defenses indicates the *likelihood* of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation."  *Arias*, 936 F.3d at 928.  Therefore, this Court cannot consider any such defenses in calculating the amount in controversy.  *See Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 774 (9th Cir. 2020) (finding the district court erred by considering an affirmative defense in determining the amount in controversy as "just because a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense" (quoting *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010)) (internal quotation marks omitted)).

### B. Future Lost Wages

When a "plaintiff claims at the time of removal that her termination caused her to lose future wages, and if the law entitles her to recoup those future wages if she prevails, then there is no question that future wages are 'at stake' in the litigation."  *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018).  Here, the Complaint alleges Plaintiff is entitled to "future lost wages," (Compl. ¶ 35.), which are recoverable if Plaintiff prevails on her FEHA claims.  *See Wysinger v. Auto. Club of S. California*, 157 Cal. App. 4th 413, 427 (2007).

The Complaint does not specify the number of years for which Plaintiff seeks such wages nor the number of years she intended to continue working for Defendants.  Defendants explain that they therefore, "conservatively" assume Plaintiff seeks future lost wages for two years after the filing of the Complaint.  (Not. at 7.)  However, this assumption is speculative and not grounded in the language of the Complaint as the Complaint contains no indication of the number of years for which

Plaintiff seeks future lost wage damages. Therefore, the Court declines to consider future lost wages in determining the amount in controversy. *See Adkins v. J.B. Hunt Transp., Inc.*, 293 F. Supp. 3d 1140, 1144 (E.D. Cal. 2018) (declining to count two years of future lost wages toward the amount in controversy where the complaint did not expressly seek two years of front pay); *Paris v. Michael Aram, Inc.*, No. 2:18-cv-00067-PA-SKX, 2018 WL 501560, at *2 (C.D. Cal. Jan. 22, 2018) (same); *see also Crockett*, 2024 WL 516713, at *4 (finding "Defendant's conjecture that Plaintiff could seek or would be entitled to four years of front pay damages is insufficient to meets its burden" when the complaint did "not expressly seek four years of front pay damages").

### C. Non-Economic Damages

Plaintiff seeks damages for emotional distress. (Compl. ¶ 37.) Specifically, the Complaint "claims general damages for emotional and mental distress and aggravation in a sum in excess of the jurisdictional minimum of this Court." (*Id.*) As the Complaint itself indicates Plaintiff seeks $25,000 solely for this particular claim (*see id.*), Defendants' assumption that the amount is controversy for this claim is $25,000 is reasonably drawn from the Complaint. (*See* Not. at 8.) Therefore, the Court adds $25,000 to the amount in controversy.

### D. Attorneys' Fees

When attorneys' fees are recoverable under state law, they are included in the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). As Plaintiff brings claims under FEHA, she may recover attorneys' fees if she prevails. *See* Cal. Gov't Code § 12965(c)(6).

In FEHA actions, courts in this Circuit have routinely found the assumption of 100 hours of work at a rate of $300 per hour reasonable for purposes of determining the amount in controversy. *See, e.g.*, *Skipple v. Pepsico Beverage Sales, LLC*, No. 2:24-cv-01046-WBS-CKD, 2024 WL 3011029, at *2 (E.D. Cal. June 12, 2024*); Lehman v. Amazon.com Servs., LLC*, No. 2:23-cv-02022-DAD-JDP, 2023 WL 8184932, at *3

(E.D. Cal. Nov. 27, 2023); *Owuor v. Wal-Mart Assocs., Inc.*, No. 2:21-cv-02232-KJM-JDP, 2022 WL 1658738, at *3 (E.D. Cal. May 25, 2022); *Adkins*, 293 F. Supp. 3d at 1148.  Given Plaintiff brings six FEHA claims and that other courts have overwhelming found such assumptions a reasonable estimation of attorneys' fees in FEHA claims, this Court finds these assumptions reasonable. Therefore, Plaintiff's counsel could be entitled to $30,000 if Plaintiff prevails, placing this amount in controversy.

* * *

The total amount in controversy on these claims is $95,863.90 ($40,863.90 [past lost wages] + $25,000 [non-economic damages] + $30,000 [attorneys' fees]).  As this amount exceeds the jurisdictional threshold and Defendants' uncontested claims of complete diversity of citizenship, the Court has diversity jurisdiction over this case.

## CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's Motion to Remand (ECF No. 10).

IT IS SO ORDERED.

Dated:   **November 13, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – Anderson25cv01916.mtr